EASTERN DIST.
*March*, 1838.

LANGLEY'S HEIRS
*vs.*
LANGLEY'S EXRS.

LANGLEY'S HEIRS *vs.* LANGLEY'S EXECUTORS.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF EAST BATON ROUGE.

A nuncupative will, to be valid, must be *dictated*, and written by the notary *as dictated*, in the presence of *three* witnesses residing in the place, &c., and then read to the testator by the notary, in the presence of the witnesses.

So, where one of the witnesses was *not present* when the will was *dictated*, but it was read to the testator by the notary, in the presence of all the witnesses, and they all signed with the testator and notary : *Held*, that the will is a nullity.

This is an action instituted by the heirs and legal representatives of George Langley, deceased, to set aside his last will and testament, executed in the nuncupative form, by notarial act, in the parish of East Baton Rouge.

The plaintiffs allege, that the will is null and void, on several grounds, among which are, that the testator was not of sound mind, and in a condition to make a valid disposition of his estate ; that the will was not *dictated* by the testator, and received by the notary, in the presence of three witnesses residing in the place ; nor was it read to the testator in the presence of the witnesses. They pray that the will be annulled and set aside ; that the executors be directed to deliver up to them the entire estate of the deceased, and that they be confirmed in their rights thereto, as legal heirs.

The executors admitted the plaintiffs were collateral relations of the deceased, but that the latter died without having any forced heirs, and had made a valid disposition of his property by will, which they averred was also valid, and should be maintained.

It appears that George Langley made a nuncupative will before a notary and three witnesses, in the parish of East Baton Rouge, the 23d of December, 1836, in which he appointed T. W. Bird and Dr. C. B. Bonney his testamen-

tary executors, and gave each of them a slave as a legacy;
he also directed, that fifteen of his slaves be emancipated
immediately on his death, and that they receive all his per-
sonal property.

The validity of the will at last turned on the single question of witnessing it, as stated in the opinion of the court, which follows.

The judge of probates came to the conclusion, that the will was good and valid in point of form, and that it had previously been duly admitted to probate, contradictorily with an attorney representing the absent heirs, &c. Judgment was rendered sustaining the will, from which the plaintiffs appealed.

*Winthrop*, for the plaintiffs and appellants, contended, that the will of G. Langley was null, as shown by the testimony. It is clearly proved that Larguin, one of the witnesses, was not present when the will was dictated by the testator, and received by the notary. It is true, he signed with other witnesses; but the law requires the will should be *dictated* by the testator, and *written as dictated, in the presence of three witnesses*, &c. *Louisiana Code*, 1571.

*A. N.* and *R. N. Ogden*, for the defendants, urged, that as the third witness was present with the others, when the notary, in an audible and distinct voice, read the will to the testator, who declared to the notary and the witnesses that it was his will; this was sufficient to prove its validity. The witnesses were all present at the reading and signing, and all heard the testator declare it was *his will*.

2. The plaintiffs, by attacking the will on the ground of insanity of the testator, virtually admitted it to be his *will*, and could not urge technical objections to its form.

3. The will being clothed with all the formalities required by law, could only be questioned by attacking the genuineness of its execution. 9 *Martin*, 90.

4. The will having been admitted to probate, by a competent court, it must have effect, until annulled by a direct action of nullity to set aside the judgment of the Probate

EASTERN DIST. Court, on the ground that it had been rendered on a false or
March, 1838. forged will. *Code of Practice*, 607. *5 Martin, N. S.*.
6 *Ibid.*, 622.

LANGLEY'S HEIRS
*vs.*
LANGLEY'S EXRS.

5. The will bequeathed freedom to certain slaves. They. had an interest under the will to maintain it, as the object of this suit is to reduce them again to slavery, and take them out of the guardianship of the executors. It is, therefore, a fatal objection to the suit, that they were not made parties. 3 *Louisiana Reports*, 170. 5 *Ibid.*, 105. 6 *Ibid.*, 51.

6. Slaves are permitted to appear in court as plaintiffs or defendants, when their right to freedom is in question. *Code of Practice*, 103 and 114.

7. The executors are not the proper or legal representatives of the slaves, to defend their rights under the will. 3 *Louisiana Reports*, 176.

*Carleton, J.*, delivered the opinion of the court.

This action is brought to set aside the nuncupative will, by public act, of George Langley, deceased, and to recover the personal and real property of his succession, which is alleged to be in the possession of his testamentary executors, the defendants.

The plaintiffs, who are the presumptive heirs of the deceased, alledge the will to be null and void, as follows :

1st. That the testator was insane at the time of its execution.

2d. That it " was not declared by the testator, and received by the notary, in the presence of three witnesses, residing in the place, as the law directs, nor was the said will read to the testator by the notary, in the presence of the witnesses, as the law directs."

The Probate Court, by its decree, sustained the validity of the will, and the plaintiffs appealed.

The first point having been abandoned at the trial, the controversy is made, by the pleadings, to turn entirely upon the second.

Isidore Languin, one of the three subscribing witnesses to the will, states, " that he was not present when the will was

dictated by the testator to the notary public.  Witness, and the other two witnesses to the will, viz : Mailliard, senior, and J. Mailliard, were all present when Mr. Crawford, the notary public, read the will to Mr. Langley, and when Mr. Langley and the notary, and the other witnesses, signed the same, and they were all present when witness signed the will.  Being asked whether Mr. Langley acknowledged the will to be his will, answered that he did."

The article 1571 of the Louisiana Code, declares, " that nuncupative testaments by public act, must be received by a notary public, in presence of *three* witnesses, residing in the place where the will is executed, or of five witnesses not residing in the place.  This testament must be dictated by the testator, and written by the notary as it is dictated."

What then is to be received by the notary ?  The law answers the question : the *testament*, not already written, for the notary is required to write it himself.  It is then plain, from the nature of the act to be performed, and as the word nuncupative, in its etymology, imports *nuncupo, to pronounce,* that the testator declares his intention in words, which are committed to writing as they are uttered : that is to say, the testator dictates his will, and the notary writes what is so dictated, in presence of three witnesses.  The law adds, it must then be read to the testator in presence of the witnesses.

A nuncupative will, to be valid, must be *dictated* and written by the notary as *dictated,* in the presence of *three* witnesses residing in the place, etc., and then read to the testator by the notary, in the presence of the witnesses.

The legislature has thus provided a double safeguard for the faithful execution of wills, by requiring they should be dictated in presence of three witnesses, to whom they are then to be read, that it may appear they were truly written as dictated.

The opinion here expressed, is in harmony with that entertained by this court, as far back as the year 1813, under the provisions of the old code, which have been copied *verbatim* into the Louisiana Code of 1825.  3 *Martin's Reports,* 167.

So, where one of the witnesses was not present when the will was dictated, but it was read to the testator by the notary, in the presence of all the witnesses, and they all signed with the testator and notary : *Held,* that the will is a nullity.

It does then appear to this court, that as there were but two witnesses present, at the dictation of the will, the requisites of the law have not been complied with, and that the will is a mere nullity.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be reversed ; and proceeding to render such judgment as ought to have been rendered by the court below, it is further ordered and decreed, that the last will and testament of George Langley, deceased, be, and the same is hereby declared null and void ; that the probate thereof be set aside ; that the letters testamentary, granted under said will to the defendants, be revoked ; that said executors account to the plaintiffs for the property and effects of the estate of said deceased, that may have come to their possession or under their control, and that the costs in both courts be borne by the estate.