No. 4730.

IN THE MATTER OF THE SUCCESSION OF MARY CARROLL, DECEASED, WIFE OF J. M. SHAFER.

About nuncupative testaments made by public act article 1572 of the Civil Code says: "This testament must be signed by the testator. If he declares that he knows not how or is not able to sign, express mention of his declaration as also of the cause that hinders him from signing must be made in the act."

The only mention made in this case is, "that the testatrix, being illiterate, has made her mark." This is not sufficient: the will is null and void.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J. McGloin & Nixon,* for Wm. Carroll, plaintiff and appellee, praying to be appointed administrator and for the nullity of the will of Mary Carroll. *Alfred Grima,* for J. M. Shafer, universal legatee and testamentary executor, defendant and appellant.

MORGAN, J.  The object of this suit is to annul the will of Mary Carroll on several grounds ; among others, that the pretended will, which is in the nuncupative form, by public act, is not signed by the testatrix.  The notary declares that the testatrix, being illiterate, has made her mark.

Upon this part of the case, the only one necessary for us to consider, the district judge has, in support of his judgment, which annuls the will, given reasons which are entirely satisfactory, and we adopt them: We agree with him, also, in his conclusion that there is no necessity for an administration, the rights of all parties to such a cause being reserved to them.

Therefore, for the reasons assigned by the district judge on the point here noticed,

The judgment is affirmed.

Rehearing refused.

## EXTRACT

*From the Decision of the Judge of the Second District Court, containing the Reasons adopted by the Supreme Court in Their Judgment in the Matter of the Succession of Mary Carroll, Wife of Shafer.*

\*          \*          \*          \*          \*          \*          \*

Another alleged ground of nullity is, that the will does not bear the signature of the deceased, but purports to have her mark affixed to the same, although there is no declaration on the part of said testatrix setting forth an inability to sign the same or setting forth the cause of said disability.  This is a serious cause of complaint.

The will states "that the said testatrix, being illiterate, has made her mark."  It is not signed by the testatrix.  She has affixed her mark thereto.

About nuncupative testaments, made by public act, article 1572 of the Civil Code says :  " This testament must be signed by the testator.  If he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."

The mention made is, that the testatrix, being illiterate, has made her mark.

As stated herein above, in the case of Mrs. Margaret Brand vs. N. A. Baumgarden, testamentary executor, et al., the Supreme Court has recognized the French doctrine of *equipollentia,* and held that the words in a testament : ' The testatrix, having declared that she could not write, has made her usual mark,' are equivalent to the declaration that she did not know how to sign.

But the words " the testatrix, being illiterate, has made her mark,"

are certainly not equivalent to the words that said testatrix ' could not write, has made her usual mark,' or to those ' that said testatrix did not know how to sign.'

" Illiterate," says Webster, means " unlettered, ignorant of letters or books, untaught, unlearned, uninstructed in science."

In Bouvier's Law Dictionary I find that the word illiterate means unacquainted with letters.    Hence it follows that very often illiterate persons can sign their names.

We meet every day with persons who are illiterate and who can sign their names. See the example cited by Bouvier under the *verbo:* illiterate. " To induce an illiterate man, by false representations and false reading, to sign a note for a greater amount than that agreed on, is indictable as a cheat."

This example sustains the position here assumed, that from the fact that a person is illiterate it can not be concluded that he knows not how to write or sign his name.

But it was admitted on the trial of this cause that the testatrix herein " did not know how to write or sign her name," and it is contended that courts must act upon the proofs introduced without objection, and *a fortiori,* upon admissions of parties ; and that plaintiff has nothing to fight for, he having lost all grounds in the present instance from the moment that it is admitted that the testatrix did not know how how to sign her name or write.

" Le testament est le triomphe de la liberté dans le droit civil," says Troplong.   Droit Civil Expliqué.   Donations et Testaments.   Préface, page 11, vol. 1.

At page 356, volume iii. of the same work he says :   " Un des points sur lesquels l'intervention régulatrice de la loi civile est le plus nécessaire, c'est la forme des testaments.    Il faut des règles précises pour que la volonté des mourants se montre avec certitude et qu'on n'abuse pas de ¡eur faiblesse ; mais il faut que ces règles soient simples, claires, accessibles à tous.   L'équité se révolterait contre des formalités minutieuses, inspirées par un esprit d'hostilité et non par un esprit de protection.    Un droit sacré dans son essence, comme l'est le droit de propriété, doit être traité favorablement dans son exercice ; il ne doit pas être environné d'embûches.'

Marcadé, vol. iv. p. 22, says : " Il faut, du reste, dans l'interprétation des lois concernant les formalités des testaments, et par conséquent dans l'application des règles qui précèdent, ne pas perdre de vue le but particulier que le législateur s'est proposé en réglant les formalités spéciales à chaque forme de testament.    Ainsi, dans le testament olographe, la loi, par les formalités prescrites, a voulu s'assurer que ce testament est l'œuvre entière et exclusive du testateur ; dans le testament par acte

public, que la dernière volonté du testateur a été écrite d'une manière absolument conforme à sa déclaration."

Upon these principles, coupled with the admissions of Mrs. Carroll, it is urged that there can be no doubt that the testament contains the free expression of the will of the testatrix, as she intended it, and absolutely in conformity with her declaration. It is therefore stated that I can not annul this will.

But can I take under consideration the admissions of plaintiff? Can I say that they cure the defect of the will?

Article two of the Civil Code: "Law orders and permits and forbids; it announces, rewards, and punishes, etc.

Article twelve: "Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed."

Now article 1572 says: "If the testator declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."

"Mais toutes les fois qu'il s'agira de la forme de l'acte, ce qui y manque d'essentiel, comme une date, ou une autre chose semblable, ne pourra être suppléé qu'en puisant dans le testament même et non ailleurs. Si les preuves extrinsèques sont sans valeur, parceque dans tout ce qui tient aux solemnités, le testament doit suffire à lui-même." Troplong, iii. Donations and Testaments, p. 386, sec. 1462.

The same doctrine seems to have been sustained by our Supreme Court.

"Formalities in a will are matters of strict law, and it is null if they be not complied with, however strong the moral evidence that it truly embodies a testator's last dispositions." Lewis vs. Lewis, 5 La. 387; Gaudé vs. Baudoin, 6 La. 725.

"An act, the real object of which is a disposition *mortis causâ*, if executed without the legal formalities, is void." Brittain vs. Richardson, 3 R. 78.

The will makes full proof of itself, and must show on its face that all the formalities required have been complied with. C. C. 1640; 16 La. 80; 12 R. 35; 7 An. 484; 10 An. 212.

When all the legal requisites do not appear from the will itself, it must be declared null, because no omission to mention them can be supplied by testimony. C. C. 1588; Swift vs. Swift, 9 An. 117; Falkner vs. Friend, 1 R. 48.

A nuncupative will by public act must bear upon its face the evidence that all the formalities required by law for its validity have been observed by the notary in drawing the testament. No. 1485; Succession of Wilkin; 21 An. 115.

I believe, therefore, that I am compelled to declare the last will or testament of the late Mary Shafer null and void.