Statement of the Case.
NICHOLLS, J.
In plaintiff’s petition he alleged: That Mrs. Amanda Delmas, widow of John T. Delmas, departed this life at her home on Hope Plantation, near the town of Patterson, parish of St. Mary, state of Louisiana, on the 5th day of August, 1909, leaving a succession consisting of real and personal property, moneys in bank, etc., amounting to some $50,000. That by olographic will, perfect in form, and dated the 2d day of August, 1886, he is the universal legatee of the said Mrs. Amanda Delmas, deceased. That on or about the 9th day of August, 1909, there was presented to the honorable court for probate a pretended nuncupative will by public act by Miss Emmeline Turner, a resident of the city of New Orleans, state of Louisiana.
That under said pretended will the said Miss Emmeline M. Turner, after certain special bequests, is made the universal legatee of Mrs. Amanda Delmas, deceased. That the said pretended nuncupative will by public act is utterly, and upon its face, null and void, for failure to comply with the requirements and legal forms in the confection of such documents. That said will was never signed by the alleged testatrix, witnesses, or notary, who pretended to act in the construction of the same, but that the signatures only appear at the end of what the notary terms a codicil, and after the conclusion of the will proper and the turning aside of the' notary to this so-called codicil, and without the completion of the will proper.
That the will is absolutely void for other legal defects fatal to its maintenance, which will be pointed out upon the trial of this suit.
The premises considered, petitioner prayed for the citation of the various legatees named in said alleged will, and that the document filed for probate by the said Miss Emmeline Turner, and which pretends to be the last will and testament of the said Mrs. Amanda Del-mas, deceased, be declared illegal, invalid, and no will, and that the parties named as legatees thereunder be decreed to take nothing by virtue of the same, and as to all the property, real and personal, rights, credits, rents, income, moneys in bank, and other profits of petitioner, that in due course of law he be placed in possession of the same, and that there be a full accounting of all the property belonging to said succession. And petitioner prays for costs and general and equitable relief.
On September 1, 1909, several of the defendants appeared and prayed for oyer of the alleged olographic will. The court ordered plaintiff to produce the same. The defendants, on September 6, 1909, appeared and declared that they did so before pleading to the merits and solely for the purpose of filing the exception they then filed, excepting to plaintiff’s petition on the ground that the same disclosed no cause of action. They prayed that their exception be maintained and plaintiff’s suit be dismissed and rejected.
The minutes of September 16, 1909, contained the following entry:
“Exception of no causé of action, fixed for today, taken up, argued, and submitted. In this case it is agreed between counsel that ‘both wills be considered by the court as a part of this record in this exception and that’ counsel for either side shall have the right to have copies made of any other document in the record No. 3,340 (Probate) succession of Mrs. Amanda Del-mas, Deceased, and (have?) same filed in the present suit, and that the same shall form and constitute a part of this record.”
The minute entry, as found in the transcript, is mostly typewritten; but the words “both wills be, considered by the court as part of this record in this exception and that” are in writing.
*1087 The reason assigned for this condition of the minutes is that the typewritten portion of the minutes was the original entry, but it was amended or corrected by order of the judge when read out.
In his certificate to the transcript the district court certifies that:
“It contains a true and correct abstract of the minute entries of said (this) case,” and “a true and correct copy of the last will and testament of Mrs. Amanda Delmas, deceased, as filed in her succession, No. 3,340 of the probate docket of said court, and of the last wiil and testament of said deceased as is in the possession of the plaintiff in said suit, both of which said wills having been copied by me, said clerk, and made a part of the transcript by consent of the attorneys therein.”
The present suit was filed in the district court under the number 12,518 of the docket of that court under the title “Joseph I-I. Oglesby v. Miss Emmeline M. Turner et al.”
The succession of Mrs. Amanda Delmas (widow of John T. Delmas) was opened in the district court of St. Mary under the (‘number 3,340” of the probate docket of that court, and was entitled “Succession of Mrs. Amanda Delmas, Deceased.” In the last-mentioned proceeding the alleged last will and testament in nuncupative form by public act of the deceased (that which is attacked in the present suit) was presented for probate, probated, and ordered executed. When the exception of no cause of action filed by the defendants herein was taken up for trial, the fact that the will which was attacked, while probated in the Court, had not been filed in the present proceeding, was noticed, and an attempt was made by the defendants to have the two causes consolidated; but plaintiff’s counsel objected, and the agreement between counsel, which is referred to in the minutes, was entered into.
The exception of no cause of action was then taken up and tried. The trial judge sustained the exception of no cause of action and dismissed plaintiff's suit. In doing so he took up the different grounds set up for the nullity of the will, discussed them separately, and declared .them not- to be well taken.
The plaintiff excepted to his doing so, and, as we understand, insists that he should have limited himself to declaring either that the exception of no cause of action was “overruled,” or “was sustained and the suit dismissed.” Plaintiff urges that he should not have taken up the different grounds for nullity, passed upon their merits, and announced that they had no legal merit. Plaintiff says that the case was before the court purely on an exception that it was not at issue, and that the trial court had no right or authority under that condition of affairs to pass upon the merits of the controversy.
Opinion.
In his brief plaintiff’s counsel uses the following language:
“On taking up the exception defendants’ counsel proposed to consolidate the proceedings in the succession of Mrs. Amanda Delmas with the action of nullity, and to this proposition plaintiff’s counsel in the action of nullity objected, upon the ground that the exception of no cause of action which was then on trial depended solely upon the allegations of the petition for its determination. Counsel for defendants then requested that for the purpose of having the Supreme Court inspect said will, in case it so desired, the nuncupative will be allowed to be attached to the transcript which would go to the Supreme Court. It was finally agreed between counsel that both wills and such other documents as counsel would agree upon should be transcribed from the succession record and attached to the transcript which would go up to the Supreme Court upon the action of nullity then pending on the exception of no cause of action. This agreement was placed in the minutes as counsel had agreed, though the documents which were to go up to the Supreme Court for inspection were not yet selected, and had nothing whatever to do with the trial of the exception of no cause of action. After the judge had decided the exception, counsel for exception, observing that the judge’s reasons were based mainly upon the nuncupative will, which was to be attached to the transcript as above set forth, inspected the minutes in person and found therein the interlineation in the handwriting of the judge which will be found in the transcript. Plaintiff’s counsel remonstrated with the judge *1089 and with counsel for the defendants relative to the said interlineation; but they insisted that the same had been made in open court and that plaintiff's counsel was present at the time. If he was present, he had no recollection of the said interlineation having been made in his presence, and his attention was only called to the same after he heard the judge read his reasons for judgment. No steps were taken by plaintiff’s counsel to correct the matter of the interlineation, because he knew that the fate of the exception of no cause of action must depend upon the allegations of the petition alone, and that no amount of evidence could affect the determination of the exception.
“In reading the reasons of the judge for the judgment appealed from it will be seen that he has considered the merits of the case, and not the exception of no cause of action. This was impossible, because the cause was not at issue; nothing but the exception of no cause of action being before the court. * * * In this connection, and as bearing out the statement of the plaintiff’s counsel that the two wills were simply attached to the transcript for inspection and formed no part of the record, counsel calls the attention of the court to the fact that neither of those papers bear the file mark of the clerk. The clerk knew that the papers were not to be used on the trial below nor on appeal, and has simply attached them to the transcript.”
Counsel refer the court to Goldsmith v. Virgin, 122 La. 831, 48 South. 279; Bouligny v. Gary, 21 La. Ann. 642; Shelmerdine v. Duffy, 4 Mart. (N. S.) 34; De La Croix v. Gaines, 13 La. Ann. 179; Hiestand v. New Orleans, 14 La. Ann. 138; Bank v. St. Landry Bank, 50 La. Ann. 528, 24 South. 14; Frank v. Magee, 49 La. Ann. 1251, 22 South. 739.
In his reasons for judgment the trial judge says:
“The case comes before the court on an exception of no cause of action. On the trial of the exception counsel for plaintiff and defendant agreed that the testament in the Succession of Mrs. Amanda Delmas, No. 3,340 of the probate docket, should be considered by the court in deciding his case as a part of the record in this suit for its annulment. * * * The testament in contest — which counsel have consented shall be considered by the court in deciding this exception as a part of the record — only proves the truth of the allegation on which it is now sought to be annulled. • * * The only causes of nullity urged are said to be apnarent on the face of the testament. * * * The whole case turns upon the simple question whether a so-called codicil and addition to the will (as the notary terms it) was a separate and distinct act or was a continuation of the will itself. The case is as fully presented for decision on this exception of no cause of action as it could be upon the merits, and it is not necessary to consider the will before the court, though the attorneys have consented that it is to be-considered by the court.”
The exception of no cause of action which is advanced against plaintiff’s action of nullity in this case is not directed at any defect in the pleadings. They are not attacked herein. The allegations of the petition are recognized as being fully sufficient for the purposes of this action. The grounds for nullity which are relied upon are clearly and distinctly set out. Plaintiff and defendant both understand what the issues before the court in respect to the testament which is attacked are. The attack which defendants make against plaintiff’s cause of action is leveled at the want of legal force of the grounds which are assigned as leading up to and carrying with them as a consequence the nullity of the will on which the defendants base their rights. Defendants say in effect:
“Granting that every ground for nullity exists as is alleged by you, none the less the will stands in law as a valid will. We do not admit, however, the correctness of the conclusions of law which you draw from your allegations. The conclusions of law which are to be drawn from your allegations are matters to be determined by the court on the trial of this exception. There are no matters of fact left open for decision by the court. You ground your action of nullity of the testament on the fa-ce of the testament. It is proper that the grounds of nullity which you now set up should be presently ancl finally disposed of.
“The defendants were warranted in presenting their exception of no cause of action before issue joined, and to have it decided, whether the particular grounds of nullity set up for attaching a will would be sufficient (if existing as stated to be by the attacking party) and (as asserted to be) apparent on the face of a will,” to carry with them as-a consequence the nullity of a will.
If as a question of law they would not, we think the court acted properly in so announcing and in dismissing the suit. We can see no good reason why the judgment of the court should be set aside and the cause remanded to be put at issue by the defendants, to be then thrown out of court for want of *1091 a cause of action. There was no issue of fact left open to he submitted and to be disposed of by the trial court. When counsel of appellant was asked on the appeal by a member of 'the court what question of fact was left open for decision below, he replied that he had alleged “that the will had not been signed,” and he should be allowed to prove that fact. It was not alleged as a fact that the signature of the testatrix was not affixed to the instrument, but that as affixed it was not legally signed. The agreement between counsel as to bringing into the record of the present suit papers which had been filed and acted on -in the probate proceedings in the Succession of Amanda Delmas, to be herein considered by the court, evidently had some object or purpose; if the present proceedings had been filed and docketed as a part of the succession proceedings, it seems to have been assumed that the trial judge could have taken judicial notice of the probated will in acting on the exception of “no cause of action,” and it was for the purpose of placing matters into that situation without consolidating the two suits that the agreement was made.
We do not think that the allegation in plaintiff’s petition “that the will is absolutely void for other legal defects fatal to its maintenance, which will be pointed out on the trial of this suit,” is any reason why the trial court should not have acted on the exception of no cause of action on the allegations as they stood.
Plaintiff had no legal right to keep the defendants in court in order to meet grounds to be pointed out and until such grounds of action should be set up in manner and form and time as he might thereafter elect to do. As a matter of fact he suggested aud pointed out no legal defects other than those alleged.
Plaintiff has no right to remand the case to enable him to fiie amended pleadings.
In his reasons for judgment the trial judge, as has been stated, has taken up and discussed the different grounds of nullity alleged by the plaintiffs. The copy of the testament, which is attacked as null, which is attached to the transcript, is as follows:
“Xe Varietur. Aug'. 9, 1909.
“[Signed] Charles A. O’Neill,
“Judge 23rd Judl. Dist., Court.
“State of Louisiana.
“Parish of Orleans.
“City of New Orleans.
“Be it known that on this sixth day of the month of May, Nineteen hundred and one (1901); ................................... Before me Edmund J. Murphy, a Notary Public, duly commissioned and qualified in and for the parish of Orleans, City of New Orleans, State of Louisiana, aforesaid,
“Personally came and appeared
“Mrs. Amanda Delmas, widow of John T. Delmas, and residing in St. Mary Parish, Louisiana ; at my Notarial Office No. 642 Commercial Alley in this City......
......“And the said Mrs. Amanda Delmas declared unto me Notary that she wished me to receive, in my official capacity her last will and Testament ...... Whereupon I, said Notary immediately proceeded to write down the last will and testament of said Mrs. widow Amanda Delmas, as the same was dictated to me, Notary by her, in the presence of George P. Crane, Thomas J. Kelley and Junior Chauvin, all three competent witnesses of lawful age, residing in this city and parish, as the same was dictated unto me, Notary by said Mrs. widow Amanda Delmas, (Widow) in the manner following, to wit......
“......I declare that my name is Amanda Hughes. I am the widow of John Theodore Delmas; I reside on my plantation property, near Patterson, in the Parish of St. Mary, Louisiana; I have been married but once and have no children living; my father and mother are both dead. ....... I give and bequeath to Mrs. Margaret Oglesby, wife of Joseph H. Oglesby of Sea Girt, New Jersey, the sum of Two Thousand Dollars.......I give and bequeath to Mrs. Lillian S. Clarke, wife of Louis S. Clarke of St. Mary Parish, Louisiana, the sum of two thousand dollars.......I give and bequeath to Mrs. Sarah E. Gooch, my niece wife of William Gooch of St. Mary, Parish of Louisiana the sum of four thousand dollars.......I give and bequeath to my nephew William E. Turner of New Orleans, Louisiana, the sum of one thousand dollars.......I give and bequeath to my nephew Edwin Turner, of New Orleans, Louisiana, the sum of five hundred dollars.......I give and bequeath to my niece Emmeline M. Turner of New Orleans, Louisiana, the sum of four thousand dollars. ......I give and bequeath to Sam Radliffe, one of my plantation hands one hundred dollars. ......I give and bequeath to Wesley Radliffe *1093 and to Abe Johnson also plantation hands the sum of fifty dollars to each.......I have in my possession a bed room set (furniture) and a parlor set (furniture) the property of Mrs. Margaret Oglesby and I desire in the event of my death that same be turned over to her........ All the balance and residue of my estate of which I may die possessed of whatsoever nature and kind movable and immovable, I give and bequeath 'to my said niece Emmeline M. Turner of New Orleans, Louisiana.......
“I hereby nominate and appoint my said niece Emmeline M. Turner of New Orleans, La., and Louis S. Clarke of St. Mary Parish, La., my joint testamentary executors with seizin and possession, and without bond or security whatsoever; my said joint executors not to receive any commission whatever......
“......I hereby revoke any and all wills or testaments I may have made previous to the foregoing and declare this as my last will and testament.......
“......Thus was the foregoing will dictated unto me, Notary by the testatrix in the presence and hearing of said witnesses, and I have written the same in their presence and in that of said testatrix as it was dictated to me, Notary and by the testatrix in the presence Of and hearing of said witnesses and having read the said will to said testatrix.......
In the presence and hearing of said witnesses in a loud and intelligible voice, she declared unto me, Notary, that she perfectly understood the same and persisted therein.......
“Thus done and received at the place and on the day and date first above written at the hour of three thirty o’clock P. M. and signed by said testatrix the witnesses and me, Notary, the whole being done at one time, without interruption or suggestion, discontinuance or turning aside to other acts.......
“......And at the moment of signing the testatrix declared unto me, Notary, in the presence and hearing of said witnesses, that she desired in addition to the bequests already made to give and bequeath and does hereby bequeath to St. Joseph’s Catholic Church at Patterson, Louisiana, Five hundred dollars to be used exclusively for the purpose of keeping her tomb now in the Catholic Cemetery next to said church, in good condition and state of preservation.......Thus was the foregoing codicil and addition to this will dictated to me Notary by said testatrix in the presence and hearing of said witnesses and I have written the same in their presence and in that of said testatrix as it was dictated to me Notary, by the Testatrix in the presence and hearing of said witnesses; and having read the said codicil to said testatrix in the presence and hearing of said witnesses in a loud and intelligible voice, she declared she perfectly understood said codicil and addition and persisted therein...... Thus done and received at the place and on the day and date first before written at the hour aforesaid, and signed by said testatrix the said witnesses and me, Notary, the whole being done at one time, without interruption, suggestion, or discontinuance or turning aside to other things or acts.
“[Original signed]......Amanda Delmas...
“......Junior Chauvin. ..
“......George D. Crane...
“......T. J. Kelley. ..
“......E. J. Murphy, Not. Pub.
“I hereby certify the above and foregoing to be a true and correct copy of the original will and testament of record and on file in my office.
“In faith whereof I have hereunto signed my name and affixed my official seal at New Orleans, this tenth day of May, 1901.
“[Signed] E. J. Murphy, Not. Pub.
“Ne Varietur. Aug. 9, 1909.
“Charles A. O’Neill,
“Judge 23rd Judl. Distr. Court.
“Reed. & Filed Aug. 9th., 1909.
“[Signed] W. S. Ostheimer, Dy. Clk.”
The district judge disposes of the different grounds assigned by the plaintiffs for the nullity of the testament as follows:
“The plaintiff charges that the writing of the so-called codicil or bequest in favor of the church after completing the will, all but the signa'ures, as far as it went, gave rise to two distinct violations of the legal requirements, viz.: First, that the writing of the codicil was a turning to another act, before the complel ion of the will; and, second, that the codicil or bequest in favor of the church, coming in as it does between the main body of the will and the signatures, separates the signatures from the principal part of the will and makes them refer only to the codicil.
“The plaintiff’s counsel have submitted the following authorities on the manner of disposing of this exception, viz.: Bank v. Bank, 50 La. Ann. 528 [24 South. 14], Bouligny v. Gary, 21 La. Ann. 642, and Frank v. Magee, 49 La. Ann. 1250 [22 South. 739]. These authorities simply hold that, in determining whether a plaintiff has alleged a cause of action,- the allegations of his petition must be taken as true; and if any one of his allegations entitles him to any relief, the court must overrule the exception without being required to designate which allegation expresses the cause of action. There can be no dispute of these principles of law, and the exceptors apparently do not contest them.
“In support of their argument that the plaintiff has a cause of action his learned counsel submit the following authorities, viz.: Seghers, Attorney for Absent Heirs, v. Antheman, Executor, 1 Mart. (N. S.) 83, Langley’s Heirs v. Langley’s Executors, 12 La. 117, Shannon v. Shannon, Executor, 16 La. Ann. 9, Succession of Mary Carroll, 28 La. Ann. 388, and Succession of Aglaé Armant, 43 La. Ann. 310 [9 South. 50, 26 Am. St. Rep. 183].
“In the first of the cases cited — that is, Seghers *1095 v. Antheman, Executor, 1 Mart. (N. S.) 83— the point decided was that, ‘when the notary states that he wrote the will without turning aside io other acts,’ it is not necessary to ado, ‘without interruption.’ There is nothing else in that case which bears any closer upon the point in controversy here. In the. next case cited — that is, Langley’s Heirs v. Langley’s Executors, 12 La. 117 — a nuncupative will was held to be null, ‘where one of the witnesses wa$3 not present when the will was dictated, but it was read to the testator by the notary in the presence of all the witnesses, and they all signed with the testator and notary.’ In the present case there is no allegation that one of the witnesses was not present when the will was dictated, and I cannot see where the case cited has any application.
“In the .next two cases cited, namely, Shannon v. Shannon, Executor, 16 La. Ann. 9, and Succession of Mary Carroll, 28 La. Ann. 388, the point decided was that the codal requirement with regard to the nuncupative will is imperative that: ‘This testament must be signed by the testator. If he declares that he knows not how or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act.’
“In one of these cases cited the notary’s declaration was: ‘The said testator, 'being too weak to sign his name, has made his mark.’ And in the other case the notary declared: ‘The testatrix, being illiterate, has made her mark.’ The court held that neither of these walls contained a proper mention of the testator’s declaration of his own inability to sign and that the notary’s declaration could not supply the declaration of the testator himself. The court fails to see where either of these cases lias any application to the point in controversy in the present case.
“In the next and the last case cited by the plaintiff’s learned counsel (that is, Succession of Aglaé Armant, 43 La. Ann. 310 [9 South. 50, 20 Am. St. Rep. 183]) the issue decided was that the proper and natural place for the signature of the testator or testatrix, in an olographic will, is at the conclusion or end of the will: and it was held that the testatrix’s name, written in her own handwriting, in the caption or heading of the will, thus ‘Tesl ament d’Aglaé Armant,’ was not intended as a signature to the will, and the will was held invalid for w'ant of the signature of the testatrix. The proper and natural place for the testatrix’s signature to any statement is at the conclusion or end of the instrument. The plaintiff’s allegation or complaint in this respect is ‘that the signatures of Mrs. Delmas, the testatrix, witnesses, and notary, only appear at the end of what the notary terms a codicil, and after the conclusion of the will proper and the turning aside of the notary to this so-called codicil, and without the completion of the will proper. It follows that if this so-called codicil and addition to the will, as the notary calls it, is to be considered aa another and distinct act from the will itself, then the signatures are at the end or conclusion of the will proper. But, if the so-called codicil and addition to the will — the bequest to the Catholic Church — is to be regarded as a continuation of the will itself, then the signatures are properly placed at the conclusion or end of the one act and the writing of this additional bequest did not amount to a turning aside to another act.
“The learned counsel for the plaintiff argued that the term ‘codicil,’ used by the notary, designates this last bequest as a separate act, and not as a part of the one will. The notary did not use the term ‘codicil’ alone, but styled the additional bequest a ‘codicil and addition to this will.’ But, if the notary had used the term ‘codicil’ alone, he would have been using a term which is synonymous with the word ‘bequest’ or ‘disposition.’ Our Civil Code uses the word ‘codicil’ as synonymous with the word ‘disposition’ or ‘legacy’ thus: ‘No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated. But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided (hat the act be clothed with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will.’ Rev. Civ. Code, art. 1570.
• “If this little bequest in favor of the church were called upon to define itself, it might answer all legal requirements by saying, ‘Dei dono sum quo sum.’
“The French commentators recognize that it is permissible for (he notary to receive an additional bequest dictated by the testator after reading the will to the testator without vitiating the act as a whole, provided the notary then reads also the additional bequest, for example:
“ ‘Be 13. il résulte que si, aprés avoir lu le testament le notaire y ajoutait une nouvelle disposition dictée par le testateur, sans en donner lecture, le testament serait nul tout entier.’ Baudry-Lacantinerie & Colin’s Civil Right, vol. 11, p. 97, par. 2055.
“Of course, as the notary in the present case did read the additional bequest, ‘nouvelle disposition dictée par le testateur,’ the law in this respect is complied with, and there is no attack upon the testament for want of reading of the additional bequest.
“Fuzier-I-Ierman, p. 700, No. 241: ‘En d’autres termes un testament est nul en entier, lorsque aprSs la mention de la leeture, il se crouve disposition ajoutée, et qu’il n’est past fait mention de la lecture de cette addition au testament.’ ‘Lorsque des dispositions additionelles suivent la mention de la lecture ces dispositions doivent Stre accompagnées d’une mention partieuliére de lecture.’ Dalloz, Nouveau Code Civil, vol. 2, c. 5, art. 972, p. 619, par. 508.
“And read in volume 5, p. 410, in paragraph 432:
*1097 “ ‘C’est ce qui arrive lorsque aprés la mention de la lecture le testateur ajoute quelque disposition. II faut alors donner lecture de cette addition en presence des témoins ec taire mention expresse de cette lecture faute de quoi le testament serait nul en toutes ses dispositions; ear un testament se compose de toutes les dispositions dictées par le testateur et du procés verbal redigé par le notaire.’
The additional bequest made by Mrs. Deimas in favor of her church after the notary had read her will as far as it was then done and completed cannot be reasonably considered foreign to the act then in hand or a turning aside to_ another act. The continuity of the language —i. e., ‘And at the moment of signing the testatrix declared unto me, Notary,’ etc. — forbids such a construction.
“The case of Lawson v. Lawson, reported in 12 La. Ann. 604, seems to cover the point precisely, viz.:
“ ‘As to the conditional bequest in favor of Harrison, erroneously styled a codicil, although the attention of the testator was called to the subject by an interrogatory put to him after the main dispositions of the will were made, we are unable to say that it was foreign to the legitimate business in hand.’ The same may be said of Mrs. Deimas’ bequest in favor of her church, styled a ‘codicil,’ which was dictated and written after the main dispositions of the will were made. There being no dispute about the fact upon which the plaintiff founds this action of nullity, and the only issue being tbe legal or illegal consequences of the fact, the suit was very properly submitted on this exception of no cause of action. The court considers the exception well founded, and the suit must be dismissed as to the exceptors.”
We think that on the trial of the exception of no cause of action the trial judge was authorized to consider and decide wheth; er grounds such as those set up by the plaintiff would, if existing as alleged by him, carry with them as a consequence and result the nullity of a will, and on holding that they would not he was warranted and justified in sustaining the exception and dismissing the suit. The conclusions of law reached by the district court in this case were correct, and the judgment appealed from herein is affirmed.