**CALLENDER v. MARKS.**

No. 5183.

Court of Appeal of Louisiana.
Second Circuit.

April 1, 1937.

Conforming to opinion of Supreme Court in 185 La. 948, 171 So. 86.

Dickson & Denny, of Shreveport, for appellant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellee.

DREW, Judge.

In order to properly state this case, it is necessary to give the history of it and that of suit No. 5182 on the docket of this court. For reported decisions by this court, see 166 So. 891; Id. (No. 5183) 166 So. 892; and for the opinion of the Supreme Court, see 185 La. 948, 171 So. 86. The history is as follows:

Suits entitled I. F. Callender v. R. O. Marks, bearing Nos. 61895 upon the docket of the First judicial district court of Caddo parish, La., and 5182 on appeal, and I. F. Callender v. R. O. Marks, bearing Nos. 62614 on the docket of the First judicial district court, Caddo parish, La., and 5183 on appeal, were consolidated in the lower court for purpose of trial.

In the first-styled and numbered suit, plaintiff sought to recover damages against defendant in the sum of $1,500 and to have canceled material and labor lien filed by defendant against plaintiff's property in the amount of $711.28, representing the balance due defendant from plaintiff's lessee for construction work done on the leased premises. Plaintiff also sought to recover of defendant attorney's fees for wrongful filing of lien. Defendant filed exceptions of nonjoinder and no cause or right of action. The exception of no cause of action was sustained as to the demand for $1,500 damages, on July 8, 1933, leaving as the only undetermined item in said suit the matter of cancellation of the lien and claim for attorney's fees.

Plaintiff then filed on October 11, 1933, suit No. 62614 on the docket of the First district court, No. 5183 on appeal, seeking recovery only in said suit of alleged damages resulting from collapse of wall prior to August 20, 1932, in the sum of $1,500. Defendant timely filed in this suit pleas of res judicata, prescription, and exception of no cause or right of action, all of which were overruled, and in due course defendant filed his answer reserving rights under pleas and exception aforesaid.

The cases were then tried on the merits, having been consolidated for the purpose of trial under the following stipulation: "By agreement of counsel combined for the purpose of trial, the only point to be covered in the first case is the cancellation of the lien."

By stipulation of counsel it was also agreed that $25 would be a reasonable amount in the event the court allowed attorney's fees for cancellation of the lien.

The court rendered judgment on the merits in the first suit directing the cancellation of the lien and allowing attorney's fees to plaintiff in the amount of $25, and also rendered judgment on the merits in the second suit in favor of plaintiff in the sum of $1,200 damages.

Defendant filed motion for a new trial and/or rehearing in both cases. The motion was refused in the first suit and was granted in the second. The second suit was then resubmitted and the court sustained the plea of prescription of one year and rendered judgment in favor of defendant dismissing plaintiff's suit with costs; from which judgment plaintiff has appealed.

Plaintiff and defendant appealed from the judgment rendered in the first suit, bearing No. 5182, and this court amended the judgment of the lower court by refusing to allow $25 damages. The opinion of this court in said suit No. 5182 has been acquiesced in by plaintiff and defendant, and, accordingly, there are no issues left in it for presentation to this court at this time.

In suit No. 5183, this court affirmed the judgment of the lower court sustaining the plea of prescription of one year. Plaintiff applied for writs to the Supreme Court and, upon said writs being granted, the Supreme Court annulled the judgment of the Court of Appeal, overruled the plea of prescription of one year and remanded the case to the Court of Appeal for further proceedings consistent with the views expressed by the Supreme Court. The plea of prescription is the only issue herein that has been finally disposed of, and all other questions of law or fact may be presented and considered by this court; and, giving full effect to the judgment of the Supreme Court, there is now no judgment of the trial court on the issues or facts involved herein.

We are now called upon to settle first the plea of res judicata urged here by

defendant, and then to determine the case on its merits. In passing upon the merits of the plea, we need go no further than the opinion of the Supreme Court, rendered on review of our former judgment. The opinion is now a part of this record. In the majority opinion (185 La. 948, 171 So. 86, 88) the court said: "* * * because the dismissing of the petition on the exception of no right or cause of action was equivalent to a nonsuit." Citing McCoy v. Arkansas Natural Gas Company et al., 184 La. 101, 165 So. 632, and in the concurring opinion by Chief Justice O'Niell, he said: "But a judgment dismissing a suit on an exception of no cause of action, where the petition merely lacks an essential allegation, of a fact which might nevertheless exist, the judgment is only a judgment of nonsuit." Citing Laenger v. Laenger, 138 La. 532, 70 So. 501, 502.

We feel sure the court in its majority opinion inadvertently included the exception of no right of action in the above-quoted statement from that opinion. We feel assured of this because there was not before them any exception of no right of action. In the lower court only the exception of no cause of action was sustained and the ruling of the lower court was acquiesced in by plaintiff. Furthermore, it was unnecessary to discuss an exception of no right of action and anything said thereon would be purely obiter.

The correct rule and difference in the two exceptions are accurately stated in the case of Laenger v. Laenger, cited supra, and are as follows:

"There are two distinct classes of exceptions of no cause or right of action in our practice. One is founded upon the omission from the plaintiff's petition of a necessary allegation of fact, which, though not alleged, may nevertheless exist. The other, based upon a complete statement of the case in the plaintiff's petition, denies that the law affords the relief prayed for. The distinction is observed in the effect of a judgment sustaining an exception of the one class or the other, and was recognized by this court in Baker v. Frellsen (on rehearing) 32 La.Ann. [828], 829, and in Oglesby v. Turner, 124 La. 1084, 50 So. 859, and Id., 127 La. [1093], 1094, 1095, 54 So. 400, by the Supreme Court of Tennessee in the case of Moore v. Chattanooga Electric Ry. Co., 119 Tenn. 710, 109 S.W. 497, 16 L.R.A.(N. S.) 978, and by the Supreme Court of the United States in Northern Pacific Ry. Co.

v. Slaght, 205 U.S. [122], 128–133, 27 Sup. Ct. 442, 51 L.Ed. 738. Some authorities distinguish these demurrers by calling the former the exception of no cause of action and the latter the exception of no right of action.

"A judgment sustaining an exception of no cause of action, because of the plaintiff's omission of a necessary allegation is not a bar to another suit on sufficient allegations. See Hart v. Bowie, 34 La.Ann. [323], 326; Succession of Herber, 119 La. 1064, 44 So. 888; New York Mercantile Co. v. W. M. Cady Lumber Co., 133 La. 729, 63 So. 304; Carolina Portland Cement Co. v. Southern Wood Distillates & Fiber Co., 137 La. 469, 68 So. 831. But a judgment sustaining an exception of no right of action, aimed at the merits of the plaintiff's demand, and assuming the case to be stated completely in the petition, is a basis for the plea of res judicata, the same as if the judgment had been rendered on evidence in the case. See Northern Pacific Ry. Co. v. Slaght, 205 U.S. [122], 128–133, 27 Sup. Ct. 442, 51 L.Ed. 738, and authorities there cited; Oglesby v. Turner, 124 La. 1084, 50 So. 859, and Id., 127 La. [1093] 1094, 1095, 54 So. 400. Res judicata, in the cases last cited, was said to result from the doctrine of the following cases, that it matters not in what form of proceeding the question is presented, whether by answer or exception to the petition, when once decided, it is res judicata between the parties to that proceeding, and is a complete bar to another demand for the same thing on the same cause of action, viz: Plicque & Le Blanc v. Perret (Peain, Intervenor), 19 La. 318; Heroman v. Louisiana Institute, 34 La.Ann. 805; Broussard v. Broussard, 43 La.Ann. 921, 9 So. 910; Tutorship of the Scarborough Minors, 44 La.Ann. 288, 10 So. 858; McNeely v. Hyde, 46 La.Ann. [1083], 1084, 15 So. 167."

Also, see, McCoy v. Arkansas Natural Gas Company et al., cited supra.

It therefore follows that defendant's plea of res judicata is without merit and is overruled.

The merits of the case involve the right of plaintiff, the owner of a natatorium in the city of Shreveport, to recover damages from defendant, a contractor, for an alleged defective concrete wall inclosing a reservoir for water to be used in filling a pool, and done under a contract with plain-

tiff's lessee. The material parts of plaintiff's petition are as follows:

"3. That your petitioner leased said property to the Waterman Amusement Co. Inc., a corporation organized under the laws of the State of Louisiana, acting through its President, A. C. Waterman.

"4. That on or about June 16, 1932, R. O. Marks, a building contractor of Shreveport, Caddo Parish, Louisiana, without the knowledge or consent of your petitioner, entered into an agreement referred to in letter of date June 16, 1932, to raise a portion of the wall or dam of said swimming pool some six feet, two inches higher, which work was to be done on the shallow end of said pool, which letter is hereto attached and made part hereof.

"5. That some time after said date, without the knowledge or consent of your petitioner, the said R. O. Marks entered upon said premises with his agents and employees and did construct or raise the then wall or dam at the shallow end of the swimming pool, to a height of over six feet and placed to support same pilasters, or braces.

"6. That this work was done without the defendant ever having received permission from your petitioner and without your petitioner being aware of the fact that said work was being done on his said property.

"7. That some time prior to August 30, 1932, and some time during the latter part of July, the said reservoir built by the defendant collapsed and caused a complete pulling or breaking away of the whole side of the shallow end of the swimming pool, breaking and cracking and destroying the whole side of said pool, upon which this additional work had been done.

"8. Petitioner further shows that the work done by the said defendant was of such nature and was so·constructed that when water was placed in the reservoir constructed by the defendant by either A. C. Waterman or the Waterman Amusement Co. Inc., same would not hold the weight or pressure of said water and the pilasters or braces were pushing aside and the wall built by the defendant gave way and broke, destroying itself, as well as the original walls of the shallow end of the pool.

"9. That the said defendant knew that the purpose of building these walls higher was to furnish a reservoir for the collecting and holding of a supply of water.

"10. Petitioner further shows that the construction above described was not an improvement on the property, but was such a work that injured and damaged your petitioner's property without his knowledge or consent.

"11. That the raising of the walls as above set forth was made for the purpose of furnishing a reservoir as set forth in paragraph 9, and that the defendant was well aware of the purpose of this work, and that said work was done in a negligent, careless and wrongful manner, as will be shown hereinafter.

"12. That said work was done improperly and in a faulty manner, as follows:

"(a) That there was not sufficient and proper pilasters or braces placed against the side of the said pool. That said pilasters were narrow in construction and had no footing or wide basis, and were not sufficient in number to hold said wall in place.

"(b) That the material out of which the said wall was constructed was of such nature that it cracked, broke and crumbled easily and that whereas, the defendant·made the said mixture, the exact reason for its crumbly nature is not known to your petitioner, but from its appearance your petitioner alleges that the material used therein was old and sufficient cement was not used.

"(c) That said wall was not constructed with sufficient strength, either as to braces or in the material to hold the weight or pressure of the water, which caused it to break and give way.

"(d) That the damage was caused solely through the negligent manner in which said wall was constructed, and in attempting to hold such a height of water within the said walls, braced and constructed as they were.

"13. Petitioner further shows that the said work is not an improvement on the said property and served no useful purpose, and was done without the knowledge or consent of your petitioner.

"14. Petitioner shows that his said property has been damaged in the same manner above set forth, rendering that portion of the pool useless and further disfiguring the appearance of the pool unsightly."

Plaintiff further alleged the damage to his pool caused by the defective wall is $1,500, and prays for judgment in that amount.

Defendant denied liability and alleged:

"VII. Article 7 is denied and defendant shows that the original wall on one side pulled apart from that part constructed by him; that it cracked and broke, destroying

the usefulness of one side of the shallow end of the pool, but that the part of the wall constructed by defendant was well constructed out of good material and was not responsible for the damage caused, if any.

"VIII. Article 8 is denied, except that it is admitted that the original wall under that part constructed by defendant gave way and broke, and defendant shows that the giving way and breaking of said original wall was not caused by faulty construction of new wall nor by fault of any kind on his part."

Plaintiff's lessee entered into a contract with the defendant whereby defendant agreed for a certain stipulated price to erect a concrete reservoir to be used for impounding water for future use in the swimming pool. The reservoir was to be erected in the shallow end of the pool. The plans called for raising the concrete dam between the shallow part of the pool and the deep part, about five feet, and for raising the three outside concrete walls around the shallow end of the pool approximately six feet. To raise the walls, it was necessary to build a concrete wall on top of the present concrete walls. The top wall was tied to the lower with steel rods. When the reservoir was completed and the water turned in, seepage was discovered. The seepage apparently came from behind the original wall and the floor, or bottom of the pool. The water was immediately let out and defendant attempted to remedy the reservoir's condition. When the water was again turned in and the reservoir nearly full, the east end gave way and washed out, cracking and destroying that end of the reservoir. The record makes clear the cause. The original concrete wall around the shallow end was not tied to the bottom and there was no need for it to be, due to the fact that the wall was low and the volume of water contained by this low wall did not have sufficient pressure to cause seepage. When an additional six feet of wall was added, the volume was sufficient to cause pressure great enough to force the water through between the bottom of the wall and the bottom or floor of the pool. The shallow end of the pool was built upon a fill, and the ground was necessarily unstable. The seepage loosened the dirt more and therefore caused the pilasters supporting the wall, as well as the wall, to give way and break into pieces.

Defendant is an experienced contractor in the construction of concrete structures, having followed that trade for 26 years at the time of trial. He built the first concrete swimming pool in Shreveport, and we gathered from his testimony that he had serious doubts about the durability of the reservoir he constructed for plaintiff's lessee. The record discloses that the lessee in entering the contract with defendant, relied entirely upon the contractor to erect a reservoir which would be serviceable. The contract was entered into without the knowledge of plaintiff.

Before entering into the contract, defendant inspected the pool and the ground upon which it was located. He knew the old wall was not tied to the floor of the pool and should have known that the pressure from the excess water, which was to be impounded when the walls were raised, would cause seepage which in turn would undermine the entire wall and cause its destruction. He was therefore obligated to properly brace the walls so as to prevent that which occurred. It is true he erected three pilasters along the back of the wall, but in doing so failed to ground them on solid earth, instead resting them on loose dirt which was a part of the fill.

Defendant contents himself with the theory and fact that the added wall was not defective in itself; that the proper mix of cement was used in the concrete and the workmanship good. Accepting that as true, it does not relieve defendant from the liability to plaintiff for the damage the extra wall caused him. The extra wall was the direct cause of impounding more water and caused more pressure on the lower wall than it was built to withstand. This fact defendant was presumed to have known and guard against. Plaintiff was a third party and not a privy to the contract and is entitled to recover for the damages he sustained, under articles 2315 and 2316 of the Revised Civil Code. Under the pleadings in this case he is entitled to recover the amount required to place the pool in the condition it was prior to the time of the added wall. He is not entitled to the cost of the original wall, plus the added one. Revised Civil Code, Art. 2726. Under this article plaintiff at the termination of the lease could have retained the added wall if it had remained there, but only by paying a fair price.

Just what will be the cost of replacing the wall as it was originally is not shown with any degree of certainty. It is a matter which can be ascertained and proved with a fair amount of accuracy. We are of the opinion it was not done in the original case,

probably because plaintiff was under the impression he was entitled to the cost of replacing the original wall and the additional wall. There is testimony on that question. All the testimony as to the amount of damage which plaintiff was caused is more or less guesswork and there are no reliable estimates in the record. Since it is a matter which can be ascertained and proved, we feel sure justice will be done if the case is remanded to the lower court for the purpose of hearing testimony on this one point.

It is therefore ordered that the case be remanded to the lower court to be heard on the one question, viz., the cost of replacing the pool in the condition it was before the addition of the extra wall; cost of appeal to be paid by defendant; all other costs to await the final determination of the case.