99 So.2d 495 (1958)
Succession of Miss Ella C. BECHTEL.
No. 20937.
Court of Appeal of Louisiana, Orleans.
January 6, 1958.
*496 M. Hepburn Many, Morphy & Freeman, New Orleans, for petitioners and appellants.
Gaspar R. Bossetta, New Orleans, for appellee.
McBRIDE, Judge.
The question before us is whether the two documents appellants presented for probate, which was refused by the lower court, constitute the valid olographic will of decedent. The persons named as legatees therein appealed from the judgment to the Supreme Court, which tribunal transferred the matter to us. See 231 La. 459, 91 So.2d 602. The Public Administrator for the Parish of Orleans is the appellee.
The decedent, Miss Ella C. Bechtel, wrote in ink on both sides of a single sheet of white lined paper measuring 8½ inches by 13 inches certain instructions concerning her estate, bequeathing the proceeds, after sale of her property, to several persons as special or particular legatees and to others as residuary legatees. However, she did not sign this document, although there remained a space at the bottom of the page more than sufficient to accommodate the testatrix' signature.
The initial statement made by the testatrix was:
"I, Ella C. Bechtel, of legal age and a resident of the Parish of Orleans, State of Louisiana, do make and ordain this my last will and testament hereby revoking all others."
The instrument was closed with this sentence:
"This written, dated and signed by my own hand, at New Orleans, La., this day of August twenty-first, 1953."
Miss Bechtel wrote in ink on another but smaller piece of the same type of lined paper (measuring 8½ inches by 4½ inches) the following:
"New Orleans, La., August 21st, 1953.
"The enclosed is my last will. I believe I have destroyed all other wills. Should any other be found it is to be voided."
She affixed her signature to this latter document thus: "(Miss) Ella C. Bechtel."
Upon a search being made among decedent's effects for a last will and testament, both of the documents above described were found enclosed within an envelope upon which decedent had written a superscription consisting of one word "Will." There is no evidence going to show whether the envelope was ever sealed.
Although witnesses testified before the judge that the two documents were in the handwriting of Miss Bechtel and also that the signature on the smaller one was hers, he refused to admit them to probate as *497 the last will and testament of decedent for the reasons as stated in a per curiam:
"* * * the document contained on the full, lined legal sheet of paper, with handwriting on both sides thereof, is unsigned, and the document on the part of a sheet of legal paper states `The enclosed is my last will. I believe I have destroyed all other wills.' Obviously the second document referred to on the part of a sheet of legal paper is not a will and it is not a codicil to a will. The second document referred to on the small sheet of paper contains no testamentary disposition sufficient to place it in the category of a will or a codicil."
The contention appellants make before this court is that whereas the smaller piece of paper has the same date as that written on the larger piece and contains the testatrix' signature, it must be deduced that the writing on the smaller piece was but a continuation of the writing of the will and as such be included with the writing on the larger piece as a part of the testament. They argue that the two documents taken together and considered as a whole constitute a testament which was entirely written, dated and signed by the testatrix, meeting with every requisite of LSA-C.C. art. 1588, and entitled to probate as an olographic will and testament. The said article of the Code reads:
"The olographic testament is that which is written by the testator himself.
"In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State."
In support of the contention that the signature of the testatrix found on the smaller piece of paper should be regarded as the signature to the completed testament, appellants cite us to the case of Oglesby v. Turner, 124 La. 1084, 50 So. 859, which involved a contest regarding the validity of a nuncupative will by public act. The nuncupative will had been dictated by the testatrix to the notary public who had written it down and closed the act with the following recitation:
"Thus done and received at the place and on the day and date first above written at the hour of three thirty o'clock P. M. and signed by said testatrix the witnessses and me, Notary, the whole being done at one time, without interruption or suggestion, discontinuance or turning aside to other acts * * *."
The testatrix in the cited case then decided to make an additional bequest, and the notary public, to meet this new situation, added to what he had already written the following language:
"* * * And at the moment of signing the testatrix declared unto me, Notary, in the presence and hearing of said witnesses, that she desired in addition to the bequests already made to give and bequeath and does hereby bequeath to St. Joseph's Catholic Church at Patterson, Louisiana, Five hundred dollars to be used exclusively for the purpose of keeping her tomb now in the Catholic Cemetery next to said church, in good condition and state of preservation. * * * Thus was the foregoing codicil and addition to this will dictated to me Notary by said testatrix in the presence and hearing of said witnesses and I have written the same in their presence and in that of said testatrix as it was dictated to me Notary, by the Testatrix in the presence and hearing of said witnesses; and having read the said codicil to said testatrix in the presence and hearing of said witnesses in a loud and intelligible voice, she declared she perfectly understood said codicil and addition and persisted therein. * * * Thus done and received at the place and on the day and date first before written at the *498 hour aforesaid, and signed by said testatrix the said witnesses and me, Notary, the whole being done at one time, without interruption, suggestion, or discontinuance or turning aside to other things or acts.
(Original signed)
 ......Amanda Delmas...
 ......Junior Chauvin...
 ......George D. Crane...
 ......T. J. Kelley...
 ......E. J. Murphy, Not. Pub."
One of the points at issue in the Oglesby case was whether the codicil or addition to the willthe bequest to the Catholic Churchis to be regarded as a continuation of the will itself and whether the signatures are properly placed at the conclusion or end of the one act. The Court in effect held that the additional bequest was part of the will itself and that the signatures had been affixed at the proper place.
We have been cited to no case in Louisiana, and after a careful search can find none, in which the court considered the question whether the signature to a postscript or codicil to an olographic will suffices or is to be regarded as a signing of the will itself. The Supreme Court, however, did on one occasion pass on the converse of this situation. In Succession of Dyer, 155 La. 265, 99 So. 214, the testatrix after completely writing her olographic will, including the affixing of her signature at the end thereof, skipped two lines and then named two persons as her executors. This postscript naming the executors was neither dated nor signed, and the Court held that because of that fact the postcript was invalid as an olographic testament or testamentary disposition.
In the instant case we cannot reason that the writing on the smaller document, notwithstanding that the date thereon is the same as that which the testatrix had placed on the will or the fact that the smaller document containing the signature was enclosed together with the will in the envelope, can be considered either a codicil or a postscript. In it Miss Bechtel made no disposition of any of her property or gave any directions as to the administration of her estate. All she did was to state that the "enclosed is my last will" and that she believed that she had destroyed all other wills, and then she reiterated in effect what she had written in the first document that all other wills were revoked. The word "codicil" is synonymous with the word "bequest" or "disposition," but the name given to the act of last will is of no importance. Oglesby v. Turner, supra. LSA-C.C. art. 1570 reads:
"No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated.
"But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided that the act be clothed with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will.
"Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever, whether he has or has not charged any one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law."
Nor can we by the force of any logic or reason regard the second writing as a continuation of the first or as a part and parcel thereof. Insofar as the first document, or the will, is concerned, the testatrix closed her writing with a definite air of finality in this manner:
"This written, dated and signed by my own hand, at New Orleans, La., this day of August twenty-first, 1953."
*499 Except for the testatrix' signature, the document has all the appearances of an olographic will, perfect in form. It is significant that four complete blank lines remain after the concluding sentence, and it seems to us reasonable to suppose that if the testatrix had intended that what she wrote on the second document would form a part of her will, she would have commenced writing it on the blank lines at the bottom of the will. It is obvious that Miss Bechtel could readily have written all that is contained in the second document at the foot of the will itself. All of this being so, we can consider the writing on the second document only as separate and disconnected with the will wherein the testatrix made disposition of her estate. We believe that in writing the second document she merely had the purpose in mind of facilitating a search for her will after her death by informing the interested persons who found the envelope that it was her last will and testament which was enclosed therein and that she had destroyed all other wills.
The instant case bears no analogy to Oglesby v. Turner, supra, in that in the cited case the so-called codicil contained an additional bequest dictated to the notary public by the testatrix and written down immediately beneath the closing sentence of the nuncupative will as first written. The notary public made specific mention of the testatrix' intention in regard to the bequest to the church by stating: "Thus was the foregoing codicil and addition to this will dictated to me Notary" etc. All persons present, including the testatrix, fully understood that the additional bequest was an addition to and formed part of her testamentary disposition and was a continuation thereof and the Court could view it in no other light, hence, the conclusion that the signature to the addition must be regarded as a signing of the whole.
The cases of In re Poland's Estate, 137 La. 219, 68 So. 415, and Succession of Fitzhugh, 170 La. 122, 127 So. 386, are pertinent to the issue before us, but they can hardly afford any relief or solace to appellants who cite them. Both these cases deal with the question whether the signature on another document constitutes a valid signature to an olographic will.
In the Poland case the testatrix had enclosed an unsigned olographic will in an envelope bearing the superscription written by testatrix: "The Will of Ellen E. Poland." The Court reasoned that the signature on the envelope could not serve as a valid signature to the will since a will must be signed at the end thereof.
Succession of Fitzhugh is similar to the Poland case. There the superscription on the envelope in which the unsigned testament was placed read: "My last will. Mary Fitzhugh Smith. April 23rd, 1926. New Iberia." The contention was made that the superscription appearing on the envelope was a republication of the will giving it full force and effect as of the date placed on the envelope. The holding in the case was that a will should be signed at the end and that the document in the envelope, which lacked the testatrix' signature, was not valid for that reason, since all the superscription indicated was that the envelope contained the last will of testatrix, which was in fact unsigned and therefore incomplete. The following language is found in the Court's opinion:
"* * * it is not beyond the bounds of reason that the testatrix, after writing down the testamentary dispositions and dating them, was undecided as to whether to complete the dispositions by affixing her signature at the end of them, and therefore placed them in an envelope, sealed the envelope for security, and placed the superscription thereon for her own convenience, so as to identify the envelope readily, intending, if she later concluded that the dispositions met with her wishes, to do the ordinary, usual, and naturally suggestive act of signing them at their close, so as to show what was written above was her last will, just as she would in completing any other solemn *500 document. There would be no justification in our lessening the degree of certainty which the law requires of the testator in disposing of his estate, by holding that when the law says that the will must be signed by the testator, it suffices for him to sign on the envelope, containing the testamentary dispositions, although this is not the customary, logical, and historic place for him to affix his signature to a solemn act."
The above-quoted observation of the Court could well apply in the case of Miss Bechtel's will.
The only difference we can see between the Poland and Fitzhugh cases and the one before us is that in the former the signature appeared on the envelope in which the will was placed, while in the instant case the signature appears on a separate document enclosed in the envelope in which the unsigned will was deposited by the testatrix. At this point this question suggests itself: Suppose Miss Bechtel had written the same words contained in the second document on the envelope rather than on the separate document. Then could the signature on the envelope serve as a valid signature to the unsigned will? Under the Poland and Fitzhugh cases that question would be answered in the negative. Therefore we ask, why should the situation be considered any different because the writing and signature appear on another sheet of paper enclosed with the will and not on the envelope?
In the opening paragraph or caption of her will the testatrix wrote, "I * * * do make and ordain this my last will and testament hereby revoking all others," and the thought occurred to us, although the point was not raised, that perhaps it should be discussed whether the writing of the testatrix' name in the body of the will is the equivalent of the testatrix' signature to the will. We find that this point was put at rest in Succession of Armant, 43 La.Ann. 310, 9 So. 50, 26 Am.St.Rep. 183, wherein the Court said this:
"An olographic testamentary writing containing the caption `Testament d'Aglae Armant,' but without signature at the end or following the testamentary dispositions, does not import such a signature as is required under the historical and rational interpretation of the article 1588 of our Code."
Succession of Armant was discussed by the Court in Succession of Fitzhugh, supra, and of this case it was said:
"* * * In that case, as a reading of the decision will disclose, the court, after discussing the French authorities, adopted the view that the signature ought to be at the end of the testamentary dispositions, which is its logical and usual place, not only in wills, but in all other solemn acts."
Were we to reach the conclusion that the second document which bears the signature, in effect, supplies the signature to the unsigned will placed in the envelope, that would be tantamount to saying that a testator could make his testamentary disposition by reference to another document. Under our law this cannot be done. In Succession of Ledet, 170 La. 449, 128 So. 273, 274, the Supreme Court observed:
"And it may be conceded at once that a will cannot be made by mere reference to another document not itself a will, or to a former will that is invalid because of want of proper form. All the French authorities agree on that."
We fully agree with appellants that the law favors testacy over intestacy and that testaments should be examined by courts with that in mind, but we do not think that it is the policy of the law to accord favorable interpretation to a testament at the sacrifice of form. No testamentary disposition can be given effect unless the forms prescribed by law are observed in *501 its making. These are mandatory. Stephens v. Adger, 227 La. 387, 79 So.2d 491. There has been no deviation from that rule.
In the case of an olographic will and testament, LSA-C.C. art. 1588 ordains that in order to be valid it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form.
LSA-C.C. art. 1595 pronounces this solemn injunction:
"The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."
LSA-C.C. art. 1570 reads in part:
"Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever, whether he has or has not charged any one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law."
In Succession of Vidal, 44 La.Ann. 41, 10 So. 414, 416, the Supreme Court said:
"* * * Testaments, like donations inter vivos, belong, under our law, to the class of solemn acts; that is acts that depend for their existence upon compliance with the forms prescribed by law."
Our final conclusion is that the document presented for probate is not valid as an olographic will and testament for the want of the testatrix' signature, and our brother below committed no error in rejecting it for probate.
It is indeed an unfortunate and regrettable circumstance that the decedent left no legal heirs since by placing her in the category of an intestate her estate devolves to the State of Louisiana in default of legal heirs. But the fact that the decedent left no kin would not be a sufficient ground for relaxing the formalities prescribed for a valid olographic testament by our law.
For the reasons assigned above, the judgment appealed from is affirmed.
Affirmed.
REGAN, Judge (dissenting).
I respectfully dissent. I am of the opinion that the will's validity is substantiated by both the rationale and the interpretation which the jurisprudence has placed upon LSA-Civil Code Article 1588[1] and that the authorities cited in the majority opinion fail to encompass the particular and special facts disclosed in this case.
The judicial function of deciding cases in conformity with precedents that are applicable is a process primarily of factual comparison and little else. The judge, in pursuing this function, figuratively compares the colors of the case under consideration with the cited cases or the case which he has discovered in research, and the cited or discovered case nearest in shade ordinarily supplies the applicable rule. That, in my opinion, is what has been done in this case.
However, I do not believe that the judicial function, especially in a civil law state, should be viewed so narrowly. The civil law technique did not evolve from such a process. It permits of the broad, individual, factual treatment of each case in order that more substantial justice may be rendered by the courts; otherwise, in the last analysis, the jurist who possessed the most *502 complete card index to the jurisprudence would likewise be the wisest judge. The fallacy of such a conclusion is too apparent to require comment.
It is (according to the true civil law concept) when there is no decisive precedent to use as a guide that the serious business of the judicial function is initiated. The judge must then, without benefit of precedent as a guide, decide, as in this case, if the will is valid in view of the provisions of the codal article as applicable or inapplicable to these particular facts and not some other facts which may remotely resemble these; and that is exactly the situation which I think this court now finds itself in.
I am of the opinion that this will is valid since it was entirely written, dated and signed by the hand of the testatrix, and there is not the least tinge of suspicion that this was not intended to be the last will and testament of Miss Ella C. Bechtel.
I am likewise of the opinion that the redactors of this article of the Civil Code, assuming arguendo that these special facts had been before them when the article was enacted, intended that they should be encompassed by the rationale thereof. No legislature is so gifted with foresight that it can anticipate all possible human events and prescribe a rule which shall specifically fit all the diversified facts which may occur and fall within the general category of the rule. The function of the judge has historically been one of interpreting the intent of the legislature, filling in what they obviously left out and generally to interpret the statute so as to cause it to be functional in conformity with contemporary civilization.
I am convinced that the second document, which was signed by Miss Bechtel and which contained the phrase "The enclosed[2] is my last will," simply included the inaccurate use of the word "enclosed" since nothing was actually enclosed therein; the court, under these circumstances, should not concern itself with the niceties of grammatical construction characterized by the literary stylist; hence the document should properly be considered as page two of the will; consequently when the two documents are considered as a whole they constitute a testament which was entirely written, dated and signed by the testatrix; thus every requisite of the codal article was fulfilled; therefore the will is entitled to probate as an olographic will and testament.
NOTES
[1] "The olographic testament is that which is written by the testator himself.

"In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State."
[2] Emphasis supplied.